MISSOURI, KANSAS & TEXAS RAILWAY COMPANY v. T. P. BUSH.

Decided May 15, 1909.

**1.—Negligence—Master and Servant—Defective Appliance.**

Where the fireman on a locomotive in the course of his duty pulled down the lever which lowered the spout of a water crane in order to supply the locomotive with water, and the lever flew up with a sudden jerk, striking and injuring him, and the negligence alleged was the failure to keep the crane in repair, evidence which did not point out the particular defect in the crane which caused the lever to fly up, but showed that there was something wrong with it that caused it to fly up, that plaintiff did not know of the defect, that it was the duty of the railway company to inspect and keep the crane so it could be operated safely, and that plaintiff was not negligent in operating it, authorized the jury to find negligence as alleged.

**2.—Same—Assumed Risk.**

Where the evidence showed that when the pressure of water was strong the lever of the crane was harder to work than when the pressure was weak, and this was known to the employee, but also showed that when the lever was properly pulled, the strong pressure of the water would not cause it to fly up with a jerk as it did, if the crane was in proper condition, the risk was not assumed.

**3.—Same—Charge—Immaterial Error.**

Where the plaintiff alleged that he was struck by the spout of the crane, and the evidence showed that he was struck by a lever which was attached to and formed a part of the spout, the jury could not have been misled by the court in using the word "spout" instead of the word "lever," in the charge submitting the issue of negligence.

**4.—Damages—Personal Injuries—Future Pain—Charge.**

Where the evidence showed that, as the effect of his injuries, at the time of the trial plaintiff had jerking and numb sensations on the injured side of the body at times, that his hands would get cold and have no circulation in them, and that he could not stand either cold or heat, the jury could infer physical pain that would continue at least for a while, and there was no error in sub-

mitting as an element of damages, the physical pain that it was reasonably probable he would suffer in the future.

**5.—Pleading—Personal Injuries.**

Under allegations showing the nature and extent of the injuries to the person, proof will be admitted of injuries not specifically mentioned but which are but the results arising from those mentioned.

**6.—Charge—Fellow Servants—Foreign Law—Weight of Evidence.**

Where the plaintiff alleged and there was evidence tending to show that the injury occurred in the Indian Territory, and there was also evidence that it occurred at a place within the Osage Reservation in Oklahoma, a charge upon the subject of fellow servants, and applying the law of Arkansas, which assumed that such law applied and did not leave it to the jury to determine whether the place was in the Territory or in Oklahoma, was properly refused.

Appeal from the District Court of Grayson County. Tried below before Hon. B. L. Jones.

*Head, Dillard, Smith & Head,* for appellant.—In an action for damages for personal injuries sustained by an employe in operating a water crane, where the alleged negligence is a failure of the master to keep same in repair and the evidence fails to show that the same is out of repair and that the master was guilty of any negligence in reference to the same that caused the employe's injury and damage, a verdict should be instructed for the master. Railway v. Patton, 179 U. S., 361.

Where a servant is injured in operating a water crane of the master, the doctrine of *res ipsa loquitur* has no application. Railway v. Patton, 179 U. S., 658; Railway v. Gaines, 46 Ark., 555; Duerler Mfg. Co. v. Dullnig, 83 S. W., 890.

Where a servant is injured in operating a water crane of the master, he must allege and prove the negligence of the master before he can recover. Railway v. Barrett, 166 U. S., 617.

There must be a causal connection between the negligence alleged and proved, and the injury. Railway v. Shoemaker, 98 Texas, 451; Wells-Fargo v. Boyle, 100 Texas, 577; Railway v. Redus, 107 S. W., 63.

Plaintiff knew that the water pressure in the crane varied, and that by the operation of the laws of nature, when the pressure was strong, the pipe and lever worked harder than when the pressure was weak, and he assumed the risk of these effects of varying pressure. Railway v. Brisco, 100 Texas, 354.

*Wolfe, Hare & Maxey,* for appellee.

RAINEY, Chief Justice.—This is a suit against the railway company to recover damages for personal injuries inflicted upon T. P. Bush in the use of a water crane while in the employ of the railway company as fireman of an engine. The negligence alleged was the failure to keep said water crane in repair. The defendant plead a general denial, contributory negligence, negligence of his fellow servant and assumed risk. A trial resulted in a verdict and judgment for plaintiff Bush, and the defendant prosecutes this appeal.

The evidence shows that plaintiff, aged 22 years, was an employe

firing a locomotive engine of defendant. His duty while out on the road was to keep the engine supplied with water. The water is conducted into the tender by means of a water crane. Plaintiff was injured at Osage, where the road had a stand-pipe or water crane. This crane has a spout through which the water flows. On top of the spout is attached a lever by the operation of which a valve is opened and lets the water flow. When the tender is in position the spout is pulled down, the operative reaches over, pulls the lever forward, which allows the water to flow in the tank. When plaintiff pulled the lever down on this occasion it flew up with a sudden jerk, striking him in the eye, putting it out, and struck him on the right side of the face, breaking his jaw. The lever worked hard before this occasion, but never flew up before. The lever when pulled over should remain stationary, until released by the operator. Water cranes are not difficult to operate, and this one did not operate as on this occasion, before nor since. The evidence of several witnesses was that it acted as though out of repair. The company had inspectors for the purpose of discovering and keeping such appliances in repair.

Appellant requested the court to instruct the jury to return a verdict for it, which the court refused, and complaint is made of this action, the contention being that the evidence is not sufficient to support the verdict in that it does not show a "causal connection between the negligence alleged and proved and the injury."

The evidence does not point out what was the particular defect in the water crane that caused the lever to fly up with a jerk when pulled down, but it shows that there was something wrong with it that caused it to operate as it did. The plaintiff did not know of the defect. There is nothing showing that he ought to have anticipated such action in operating the crane. It was the duty of the company to inspect and keep the crane so it could be operated safely. As the evidence shows it could not be operated safely and that the plaintiff was not negligent in operating it, we think it clearly deducible that the company was negligent in not keeping the crane in a condition that it could be safely operated, and the jury were warranted in so finding.

The proposition is made that "plaintiff knew that the water pressure in the crane varied, and that by the operation of the laws of nature, when the pressure was strong, the pipe and lever worked harder than when the pressure was weak, and he assumed the risk of these effects of varying pressure." The evidence shows that when the pressure of the water was strong the lever was harder to work than when the pressure was weak, but it also shows that when the lever was properly pulled over, if the crane was in proper condition the strong pressure of the water would not cause it to fly up with a jerk. We therefore conclude that there was no assumption of such risk by the plaintiff.

Complaint is made of the following paragraph of the court's charge, which reads: "Now, bearing in mind the foregoing instruction, if you believe from the evidence that on the occasion in question plaintiff attempted in the usual and proper manner to operate the apparatus furnished by defendant at the city of Osage, Oklahoma, for the purpose of putting water in its engine tanks, and if you further believe from

the evidence that while he was so attempting to do such work in such manner, if you believe he did attempt to so do said work, the spout on said watering apparatus suddenly and with great violence flew up, whereby plaintiff was struck and injured, and if you further believe from the evidence that said spout was caused to so fly up by reason of some part or parts of said apparatus being defective or out of repair; and if you further believe from the evidence that in permitting said part or parts of said apparatus to become defective and out of repair and to remain in such condition, if you find same was permitted so to become and remain, defendant was guilty of negligence, and that such negligence, if any, was the proximate cause of plaintiff's injuries, if any, you will find for plaintiff and assess his damages as hereinafter directed, unless you should find for defendant under other instructions given you."

The proposition under this assignment is: "The evidence was not sufficient to authorize ·the submission to the jury of the issue of the spout flying up and injuring plaintiff, of its being caused to fly up by parts of the apparatus being out of repair, and of defendant's negligence in permitting them to be out of repair."

The allegation in plaintiff's petition was that he was struck by the spout. The evidence showed that he was struck by the lever which was attached to and formed a part of the spout. The jury could not possibly have been misled by the court in using the word spout instead of the word lever. The assignment is not well taken.

Complaint is made of the eleventh paragraph of the charge, which reads: "If you find for plaintiff you will allow him such sum as you may believe from the evidence will, as a present cash payment, reasonably and fairly compensate him for mental and physical pain, if any, which he has suffered as the result of such injury, if any; also the reasonable value of his services for the time lost, if any, by reason of his injury, if any; also for his diminished capacity to labor and earn money in the future, if any, by reason of his injury, if any; also for the physical and mental pain, if any, it is reasonably probable he will suffer in the future by reason of the injury, if any. In this connection you are instructed that plaintiff has testified to certain conditions of his eyes existing prior to said alleged injury; you can not allow plaintiff anything for any physical or mental pain, for any diminished capacity to labor and earn money or for any time lost that you may believe from the evidence resulted or will result from such former condition of his eyes. You can only take into consideration that which resulted from the injury, if any, received on the occasion in question."

Two propositions are submitted under this assignment, to wit: (1) "Where there is evidence of damage not alleged it is the duty of the court in submitting to the jury the measure of damages to restrict them to those things embraced in the pleadings." (2) "The court should only submit to the jury those issues that are supported by evidence; and it is error for the court to instruct the jury in arriving at the damages to which an injured person is entitled, to consider physical pain which the jury may believe from the evidence it is reasonably probable the injured person will suffer in future as the result of his injuries, when there is no evidence or circumstances indi-

cating that such person will suffer any physical pain in future, nor the probable amount of such pain, nor how long he will probably suffer such pain."

Plaintiff alleged, in substance, that he was struck in the face, on the head and the eye, destroying its sight; also alleged mental anguish and physical suffering on account of said injuries. The injury occurred in March, 1906. On the trial of the case in September, 1908, plaintiff testified as follows: "When the lever flew up that way I was struck in the right eye. As it came up the first time the lever caught me in the right eye, and it carried me up with the spout, and, of course, when it shut off I came down again, and then the lever flew over and struck me in the side of the face. It struck me twice. That put my eye out and mashed the right side of my face the second lick, fractured my jaw. After I received this injury I couldn't hardly use the left side of my body at all at first. For a while I didn't have any use of it at all—the left side. That affected my left leg and left arm—the whole left side, head and all, clear down. At first I didn't have any feeling in it at all. While I could move my hand or my foot and put it on anything, I couldn't tell that it was on anything. If I would get up and stand on the floor I couldn't tell that my feet were on anything. I didn't have any feeling in it at all. If I stood up on the floor I couldn't tell my feet were on anything. If I would catch hold of anything with my left hand I couldn't tell it. If I put anything in my hand and shut it up I couldn't tell I had anything. That condition lasted that way for over two months. It don't bother me so much now, only just once in a while. Sometimes I feel it and sometimes I don't have any indications of it, but every once in a while I get kind of jerky and numb on that side. My hands get cold and there is no circulation in them. Since I received these last injuries I have not been able to work. I haven't been able to do anything at all, because I can't see for one thing, and then my conditions other ways. I am not able to do it. I can't stand the heat. I can't get out in the heat and work, and if it gets too cold I can't stand that either. I have not been engaged in any work since I received these injuries."

Dr. Heacock, for plaintiff, testified: "I am acquainted with the plaintiff, T. P. Bush, and have known him for twenty years. I was called to see him on the night of the 24th of March, 1906, at between nine and ten o'clock p. m. I found that the sight of the right eye was crushed and the aqueous fluid was running out, and there was a severe bruise on the right temple about an inch and a half from the right eye, badly discolored but skin not broken. I discovered partial paralysis of the left side of the whole body, continuing for about two months, during which time he was confined to his bed."

The allegations were sufficient to admit the proof of all the injuries shown by the proof, and that such were not specifically mentioned were but the results arising from those mentioned. As to feeling physical pain, the proof does not specify the duration of the physical pain that will be produced in the feeling in so many words, but it shows the effect of the injuries on him at the trial—that at times he has jerking and numb sensations on that side, hands get cold and no circulation in them, and can't stand either cold or heat. We think

such a condition would produce physical pain, and that it would continue for at least a while, and that there is no error in the charge.

Appellant requested a charge that plaintiff could not recover because the act that caused the injuries was the act of a fellow servant. This charge is based upon the theory that Osage, where the injury occurred, was in the Indian Territory. Plaintiff alleges Osage to be in the Indian Territory, and witness Dearth testifies to it being in the Indian Territory, and then of Osage being in Oklahoma. Appellant's witness Welch, conductor of the train at the time plaintiff was injured, in answer to questions by appellant's counsel, testified: "Osage was in the Osage Reservation in Oklahoma at that time. That was a reservation by itself, but was attached to Oklahoma. It was about three miles to the line of Oklahoma and Indian Territory." Our understanding is that the laws of Arkansas did not apply to Oklahoma, and said charge was not appropriate if Osage was in Oklahoma. Besides, said charge, in effect, assumes that said law applied, and it was not left to the jury to determine whether Osage was in Oklahoma or the Indian Territory. We think the requested charge was properly refused.

Several assignments of error are based upon the admission of certain evidence. These assignments are overruled. The verdict is not excessive. The judgment is affirmed.

*Affirmed.*

Writ of error refused.